## FRED RILEY V. THE STATE.

No. 15779.   Delivered April 5, 1933.
Reported in 59 S. W. (2d) 134.

The opinion states the case.

*E. T. Chandler* and *J. B. Keith,* both of Stephenville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is assault with intent to murder; the punishment, confinement in the penitentiary for five years.

Appellant and Mrs. Vera Riley, the injured party, had three small children, all of them being girls. Shortly before the assault Mrs. Riley had obtained a divorce from appellant. Under the divorce decree she was to have the custody of the children, but at stated times appellant was to have them. Prior to the divorce appellant had accused his wife of going with one Dee Baker, who was married. According to appellant's version, he had found several letters in his wife's handwriting. In these letters the writer expressed the desire to receive the caresses of the party to whom the letters were written. The letters bore no name or address. They were introduced in evidence by appellant. Appellant declared that he had been advised that the letters were written to Dee Baker. Mrs. Riley denied that she wrote the letters. Further, she denied that she knew Dee Baker. Appellant testified that he had been informed by others that they had seen his wife with Baker on several occasions. Touching the trouble between his wife and himself, appellant testified, in substance, as follows: He found his wife's mother and his wife with one Rucker. His wife's mother, notwithstanding she was married and living with her husband,

was permitting Rucker to hug and kiss her. He (appellant) demurred and tried to prevent his wife from going with her mother. Two or three weeks later he saw his wife carrying some letters and putting them under a rock. He secured the letters and read them. His wife finally acknowledged that she had written the letters, but would not tell him the name of her lover. Later, he was informed by some parties that they had seen his wife with Dee Baker in a car down by the railroad track. After the divorce was granted he went to his wife's home for the purpose of taking the children for the time specified in the divorce decree. He was unable to get the children. Shortly prior to the assault he saw his wife and children in town. His wife's mother was with her at the time. His wife got in a car with Dee Baker, leaving the children with her mother. She and Baker drove out of town. He got in his car and hunted for them. Finally his wife and Baker returned to town and she got out of the automobile, and Baker drove away. At this juncture, we quote from appellant's testimony, as follows:

"As to my remembering striking my wife with that knife, I don't know that I can hardly remember it or not; seems like I can, something about it. I was not cool, calm and collected; and I never was in such a shape I was in, in my life. What made me in that frame of mind was just because she left my little children, and that man that was with her, and everything I reckon, and just too uncontrollable for the act that I done. Under the decree of the court she had the custody of these three children the biggest part of the time, I just had them two days, and she was supposed to raise them, care for them, and raise them properly. This fellow that she was with was a married man. He has a wife. I know his wife. They have three children. He lives with them."

Appellant followed his wife into a store, where she had gone to secure protection. One of the employees of the store attempted to prevent appellant from attacking his wife, and held him until she ran out on the street. Appellant pursued his wife and attacked her with a knife, inflicting several wounds. According to the state's testimony, appellant said, in effect, that he would kill the whole family. Further, appellant said: "I am going to get him too." Mrs. Riley denied that she had been in a car with Dee Baker.

In the charge the court gave an abstract definition of murder without malice. Following this definition, the court attempted to define the expression "Under the immediate influence

of sudden passion." The jury were advised that such expression meant that the provocation must arise at the time of the commission of the offense and that the passion was not the result of a former provocation. Further, the jury were advised that the act must be directly caused by the passion arising out of the provocation, and that it is not enough that the mind is merely agitated by a passion arising from some other provocation, or a provocation given by some other person than the party assaulted. The jury were then advised in the charge, in substance, that any condition or circumstances which is capable of creating and does create sudden passion such as anger, rage, resentment or terror in a person of ordinary temper rendering the mind incapable of cool reflection is deemed an adequate cause. Further, the jury were instructed that where there are several causes to arouse sudden passion, although no one of them alone would constitute adequate cause, it was for the jury to determine whether or not all of such causes combined might be sufficient to do so. We quote paragraph 14 of the charge as follows:

"Although the law provides that the provocation causing sudden passion arising from an adequate cause, must arise at the time of the killing or, at the time the assault if any was committed, it is your duty in determining the adequacy of the provocation, if any, to consider in connection therewith, all the facts and circumstances in evidence in the case and if you find that by reason of anything the assaulted party did, or by reason of anything said to or concerning the accused, by the assaulted party, before and at the time of the assault, if any, that the defendant's mind at the time of the assault, if any, was incapable of cool reflection, and that such facts and circumstances, if any, were sufficient to produce such a state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation, if any, satisfies the requirements of the law."

In applying the law to the facts, the court advised the jury, in substance, to find appellant guilty of assault to murder without malice if they believed that he acted under the immediate influence of a sudden passion arising from an adequate cause, "as that term is hereinbefore defined," etc., in the charge.

Manifestly, in defining "adequate cause" and "Under the immediate influence of sudden passion" the court had in mind the law relating to manslaughter, as it existed prior to the enactment of the present statute defining murder. The statute defining assault with intent to murder provides that the court,

in its charge to the jury, shall define malice aforethought, and, in a proper case, murder without malice, and instruct the jury touching the application of the law to the facts. Article 1160, Vernon's Annotated Penal Code, 1932 Cumulative Annual Pocket Part. Article 1257c, Vernon's Annotated Penal Code, 1932 Cumulative Annual Pocket Part, reads as follows: "In all cases tried under the provisions of this Act it shall be the duty of the Court, where the facts present the issue of murder without malice, to instruct the jury that murder without malice is a voluntary homicide committed without justification or excuse under the immediate influence of a sudden passion arising from an adequate cause, by which it is meant such cause as would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection, and in appropriate terms in the charge to apply the law to the facts as developed from the evidence."

There is nothing in the foregoing statute providing that the provocation must arise at the time of the commission of the offense, and declaring that the passion must not be the result of a former provocation, etc. In his testimony, appellant detailed circumstances claimed by him to have occurred on several occasions prior to the assault. If the jury believed appellant saw his wife with Dee Baker, they might have deemed the prior occurrences related by appellant sufficient to have contributed to producing the state of mind described by him. The charge might have caused the jury to have restricted its consideration to what occurred at the time of the assault, and to the acts alone of the injured party, in determining whether appellant acted under the immediate influence of a sudden passion arising from an adequate cause. Prior to the repeal of the statutes relating to manslaughter, this court, in Butler v. State, 3 S. W. (2d) 101, speaking through Judge Lattimore, used language as follows: "When the facts of a case show, as in this one, the presence of other prior facts and circumstances which might cause or contribute to produce the passion, excitement, etc., deemed by our statute to be adequate cause, and the possible acts of persons other than those named, the court should not in whole or in part restrict the jury's consideration of same to what occurs at the time, nor to the acts of the specified persons. As stated in the original opinion, threats and acts of said parties at other times and places were in evidence and might be considered by the jury in connection with what occurred at the time, in determining the question of adequate cause."

The instructions in question not being warranted by our present statutes defining murder without malice and assault with intent to murder, the court should have amended the charge in response to appellant's exception.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.